## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEST BRANDS CONSUMER PRODUCTS, INC., | |
| *Plaintiff/Counterclaim-Defendant*, | **Civil Action No. 3:18-cv-16443** |
| v. | **Judge Freda L. Wolfson** |
| HORIZON GROUP USA, INC., | **JURY TRIAL DEMANDED AS TO COUNTERCLAIMS** |
| *Defendant/Counterclaim Plaintiff.* | |

## DEFENDANT HORIZON GROUP USA, INC.'S
## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Horizon Group USA, Inc. ("Horizon"), by and through its undersigned counsel, hereby answers the Complaint filed by Plaintiff/Counterclaim-Defendant Best Brands Consumer Products, Inc. ("Best Brands"). To the extent not specifically admitted, Horizon denies each and every allegation in the Complaint.

Horizon bases its responses to the allegations in the Complaint on actual knowledge of its own actions, and information and belief with respect to all other matters. The numbered paragraphs herein correspond to the numbered paragraphs in the Complaint.

### ANSWER

### Introduction

1.      Horizon admits that in paragraph 1 of the Complaint, Best Brands purports to set forth an action for a declaratory judgment that Best Brands' Mix'n Play Slime kits do not infringe Horizon's SLIMYGLOOP and SLIMYGLOOP MIX'EMS trademarks, or trade dress

rights.  The remaining allegations contained in paragraph 1 are legal conclusions to which no response is required.

2.      Horizon admits that in paragraph 2 of the Complaint, Best Brands purports to set forth an action for a declaratory judgment that Horizon does not have any valid trade dress or trademark rights.  The remaining allegations contained in paragraph 2 are legal conclusions to which no response is required.

3.      Horizon admits that in paragraph 3 of the Complaint, Best Brands purports to seek damages for alleged tortious interference with Best Brands' business.  However, Horizon denies that Best Brands has alleged, anywhere in its Complaint, allegations constituting tortious interference.

### The Parties

4.      Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 4 of the Complaint and, therefore, denies the same.

5.      Admitted.

### Jurisdiction and Venue

6.      Paragraph 6 of the Complaint contains legal conclusions to which no response is required.

7.      Paragraph 7 of the Complaint contains legal conclusions to which no response is required.

8.      Paragraph 8 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Horizon does not contest that this Court is the proper venue for the parties' dispute.

**Facts**

9.      Horizon lacks knowledge and information sufficient to form a belief as to the truth, falsity, or authenticity of the allegations in paragraph 9 of the Complaint and, therefore, denies the same.

10.      Horizon lacks knowledge and information sufficient to form a belief as to the truth, falsity, or authenticity of the allegations in paragraph 10 (including Exhibit A) of the Complaint and, therefore, denies the same.

11.      Admitted.

12.      Admitted.

13.      Admitted.

14.      Paragraph 14 of the Complaint contains legal conclusions to which no response is required.

**Plaintiff's Non-Infringement of Defendant's Alleged Trademarks**

15.      Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 14 of the Complaint as though set forth fully herein.

16.      Admitted.

17.      Admitted.

18.      Admitted.[1]

19.      Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 19 of the Complaint and, therefore, denies the same.

---

[1] Horizon assumes that when referring to "trademark serial no. 8,807,2148," Best Brands was referring to Horizon's U.S. Trademark Appl. Ser. No. 88/072,148.

20.     Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 20 of the Complaint and, therefore, denies the same.

21.     The first four sentences of paragraph 21 of the Complaint contain legal conclusions to which no response is required.  Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the remaining sentences of paragraph 21 of the Complaint and, therefore, denies the same.

22.     Denied.

23.     Horizon admits the allegations in the first sentence of paragraph 23 of the Complaint.  Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 23 of the Complaint and, therefore, denies the same.

24.     Denied.

25.     Paragraph 25 of the Complaint contains legal conclusions to which no response is required.

**Plaintiff's Non-Infringement of Defendant's Alleged Trade Dress**

26.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 25 of the Complaint as though set forth fully herein.

27.     Admitted.

28.      Paragraph 28 of the Complaint contains legal conclusions to which no response is required.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

**Defendant's Tortious Interference with Plaintiff's Business Relationship**

42.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 41 of the Complaint as though set forth fully herein.

43.     Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 43 of the Complaint and, therefore, denies the same.

44.     Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 44 of the Complaint and, therefore, denies the same.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

**Count I: Declaration of Non-Infringement of Defendant's Alleged Trademarks**

51.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 50 of the Complaint as though set forth fully herein.

52.     Horizon admits the allegations in the first sentence of paragraph 52 of the Complaint.  The second sentence of paragraph 52 of the Complaint contains legal conclusions to which no response is required.

53.     Denied.

54.     Denied.

55.     Denied.

**Count II: Declaration of Non-Infringement of Defendant's Alleged Trade Dress**

56.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 55 of the Complaint as though set forth fully herein.

57.     Horizon admits the allegations in the first sentence of paragraph 57 of the Complaint.  The second sentence of paragraph 57 of the Complaint contains legal conclusions to which no response is required.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

**Count III: Declaration of Invalidity of Defendant's Alleged Trademarks and Trade Dress Rights**

62.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 61 of the Complaint as though set forth fully herein.

63.     Horizon admits the allegations in the first sentence of paragraph 63 of the Complaint.  The second sentence of paragraph 63 of the Complaint contains legal conclusions to which no response is required.

64.     Denied.

## Count IV: Declaration of Lack of Damages

65.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 64 of the Complaint as though set forth fully herein.

66.     Denied.

## Count V: Defendant's Intentional Interference with Plaintiff's Business Relationship

67.     Horizon repeats and incorporates by reference its responses to the allegations in paragraphs 1 through 66 of the Complaint as though set forth fully herein.

68.     Horizon lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 68 of the Complaint and, therefore, denies the same.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

## Prayer for Relief

Horizon denies that it is liable to Best Brands or that Best Brands is entitled to judgment against Horizon.

## AFFIRMATIVE DEFENSES

As and for its Affirmative Defenses, Horizon hereby alleges as follows:

### FIRST DEFENSE

Best Brands is not entitled to the relief requested in the Complaint, in whole or in part, because Horizon's trademarks are valid, subsisting, and in full legal force and effect throughout the United States.

### SECOND DEFENSE

Best Brands is not entitled to the relief requested in the Complaint, in whole and/or in part, because Best Brands' use of the mark MIX'N PLAY SLIME is likely to cause confusion with Horizon's marks or Horizon's SLIMYGLOOP MIX'EMS play gel kits offered thereunder in violation of federal and state law.

### THIRD DEFENSE

Best Brands is not entitled to the relief requested in the Complaint, in whole and/or in part, because Best Brands' use of the confusingly similar mark MIX'N PLAY SLIME to trade off the extensive consumer recognition and goodwill, and commercial success, enjoyed by Horizon's SLIMYGLOOP MIX'EMS play gel kits, and generate turnkey brand recognition for Best Brands' confusingly similar MIX'N PLAY slime kits, constitutes unfair competition in violation of federal and state law.

### FOURTH DEFENSE

Best Brands is not entitled to the relief requested in the Complaint, in whole and/or in part, because Horizon has the right to notify third parties that they are infringing Horizon's intellectual property rights.

### FIFTH DEFENSE

Best Brands has not suffered any damages attributable to, or caused by, Horizon.

**SIXTH DEFENSE**

Best Brands has failed to mitigate its damages, if in fact there are any.

**SEVENTH DEFENSE**

Best Brands is not entitled to the relief requested in the Complaint, in whole and/or in part, because Best Brands comes to Court with unclean hands.

**EIGHTH DEFENSE**

Best Brands is not entitled to receive its attorneys' fees or statutory damages.

**ADDITIONAL AFFIRMATIVE DEFENSES**

Horizon reserves the right to raise additional affirmative defenses as further information becomes available.

**WHEREFORE**, having fully answered, Horizon prays that this Court deny all relief sought by Best Brands in the Complaint (including, without limitation, the entirety of the Complaint's Prayer for Relief on pages 11-12 thereof), enter judgment in favor of Horizon and against Best Brands on the Complaint, award Horizon its costs, attorneys' fees and expenses, and grant Horizon such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

As for its Counterclaims against Plaintiff/Counterclaim-Defendant Best Brands, Horizon hereby alleges as follows:

## THE PARTIES

1.      Horizon is a New Jersey corporation, with a principal place of business at 45 Technology Drive, Warren, New Jersey 07059.

2.      On information and belief, Best Brands is a New York corporation having its principal place of business at 25 Merrick Avenue, Suite 2, Merrick, New York 11566

## JURISDICTION AND VENUE

3.      The counterclaims for federal trademark infringement, unfair competition, and trade-dress infringement asserted in Counts I-IV *infra* arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*.  Therefore, this Court has subject matter and original jurisdiction over Counts I-IV *infra* pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), respectively.

4.      The counterclaim for copyright infringement asserted in Count V *infra*, arises under the Copyright Act of 1976, namely, 17 U.S.C. §§ 101 *et seq*.  Therefore, this Court has subject matter and original jurisdiction over Count V pursuant to 28 U.S.C §§ 1331 and 1338(a).

5.      The counterclaims for trademark infringement and unfair competition asserted in Counts VI-IX *infra* arise under New Jersey statutory and common law, and are so related to the federal claims asserted in Counts VI-IX *infra* that they form part of the same case or controversy. Therefore, this Court has subject matter jurisdiction over Counts VI-IX *infra* pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

6.      This Court has personal jurisdiction over Best Brands because Best Brands has submitted to this Court's personal jurisdiction by suing Horizon in this District.  In addition, on

information and belief, Best Brands transacts and solicits business within the State of New Jersey (including within this judicial district) on a regular and continuous basis.  Therefore, this Court has personal jurisdiction over Best Brands.

7.     Because Best Brands is subject to personal jurisdiction in the State of New Jersey, including within this judicial district, venue is therefore proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.     Horizon**

8.     From humble beginnings, Horizon's predecessor began manufacturing crafts in 1912 as a small company located in New York City.  Today, Horizon is a leading supplier of children's activity kits and craft components in the United States.

9.      Horizon's brands are recognized and trusted for delivering high quality and innovation at an exceptional value and artistic exploration for children, particularly its children activity kits.  Horizon has received several awards for its kits, including awards from Creative Child Magazine, Family Choice Awards, Teacher's Choice Awards, Parent's Choice Fun Stuff Awards and several products that were a Dr. Toys' Best Pick.

10.     Horizon products are known for using vibrant, distinctive graphics to inspire children, whether by showing how to build and paint a birdhouse or making scientific experience fun for the early and advanced learner.

## A.    Horizon's SLIMYGLOOP MIX'EMS Play Gel Kits

11.    One of Horizon's popular brands of children activity kits is its "SLIMYGLOOP®"

play gel kits.

 

12.    Horizon's SLIMYGLOOP® play gel kits are an innovative line of do-it-yourself,

all-in-one activity kits and related products that provide customers with a unique, hands-on

method of creating play gel.

## B.    Horizon's SLIMYGLOOP MIX'EMS Trademarks

13.    Since at least as early as 2017, Horizon has offered its play gel kits under its

distinctive SLIMYGLOOP® mark and SLIMYGLOOP® design mark (shown below)

(collectively, the "SLIMYGLOOP Marks"):



14.    As shown *supra*, Horizon's SLIMYGLOOP® design mark consists of the stylized

term "SLIMYGLOOP" with drippings falling below, and from, each letter in SLIMYGLOOP.

15. As part of the SLIMYGLOOP line of play gel products, Horizon offers an activity kit for children to create embellished play gel under the SLIMYGLOOP MIX'EMS word mark and the SLIMYGLOOP MIX'EMS design marks (shown below) (collectively, the "SLIMYGLOOP MIX'EMS Marks"):

  

16. These play gel kits include colorful beads, sparkles, figurines, and other embellishments, which allow consumers to enhance the play gel and make it even more exciting.

17. In the course of using and protecting the SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks, Horizon has obtained the following U.S. trademark registrations and filed the following trademark applications:

| Mark | Reg. or Appl. No. | Reg. or Filing Date | Int. Cls. | Goods and Services |
|------|------|------|------|------|
| SLIMYGLOOP word mark | 5,470,827 (the "'827 Registration") | May 15, 2018 | 28 | Children's activity kits sold as a unit for making toy modeling dough in the nature of slime |
|  | 5,470,966 (the "'966 Registration") | May 15, 2018 | 28 | Children's activity kits sold as a unit for making toy modeling dough in the nature of slime |
| SLIMYGLOOP MIX'EMS word mark | 88/072,148 | August 9, 2018 | 28 | Children's activity kit comprised of a container, glitter, figurines, beads, and styrofoam balls sold as a unit for making toy premade slime. |
|  | 88/246,989 | January 2, 2019 | 28 | Children's activity kit for making toy modeling dough in the nature of free-flowing play gel comprised of glitter, sequins, mixing stick, beads, plastic spoon, jars, measuring cup, color dyes, glow in the dark powder, wiggly eyes, sodium packets, and glue sold as a unit. |
|  | 88/246,983 | January 2, 2019 | 28 | Children's activity kit for making toy modeling dough in the nature of free-flowing play gel comprised of glitter, sequins, mixing stick, beads, plastic spoon, jars, measuring cup, color dyes, glow in the dark powder, small toy figures, sodium packets, and glue sold as a unit. |
|  | 88/246,970 | January 2, 2019 | 28 | Children's activity kit for making toy modeling dough in the nature of free-flowing play gel comprised of glitter, sequins, mixing stick, beads, plastic spoon, jars, measuring cup, color dyes, glow in the dark powder, wiggly eyes, sodium packets, and glue sold as a unit. |

18.     Attached hereto as **Exhibit A** are true and correct copies of the '827 and '966

Registrations (the "SLIMYGLOOP Registrations").

19.     By operation of law, the SLIMYGLOOP® Registrations constitute *prima facie* evidence of the validity of the marks, and of Horizon's "exclusive right to use" the SLIMYGLOOP® name on or in connection with children's activity kits sold as a unit for making toy modeling dough in the nature of slime.  *See* 15 U.S.C. § 1115(a).

**C.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress**

20.     Since at least as early as 2017, Horizon has developed and used its distinctive trade dress and product packaging for its SLIMYGLOOP MIX'EM play gel kits.

21.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress consists of, *inter alia* : (i) the trademarks SLIMYGLOOP and/or SLIMYGLOOP MIX'EMS centered at the top of the consumer-facing packaging; (ii) the tagline "Just Mix & Play"; (iii) a product configuration comprising a reusable container, glitter slime, and three unique embellishments; (iv) a sub-product name in white bubble letters in the bottom left-hand corner; and (v) a packaging layout comprising three small circular containers wrapping around a single larger circular container.

22.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress creates an overall uniform look and feel throughout Horizon's SLIMYGLOOP MIX'EMS play gel kits.

23.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress is inherently distinctive.

24.     Horizon expends substantial time, labor, and expense on advertising, marketing, and promoting its SLIMYGLOOP MIX'EMS play gel kits bearing its SLIMYGLOOP MIX'EMS Trade Dress.

25.     Horizon not only draws consumers' attention to Horizon's SLIMYGLOOP MIX'EMS Trade Dress through its packaging, but also prominently features the Trade Dress on its website, in advertising, and at leading industry trade shows and toy fairs throughout the United States.



26.     Moreover, consumers receive nationwide exposure to Horizon's SLIMYGLOOP MIX'EMS play gel kits featuring Horizon's SLIMYGLOOP MIX'EMS Trade Dress at retailers such as Target, Barnes & Noble, Walmart, and Hobby Lobby, as well as on e-commerce sites, such as Amazon.com.

27.     Because of Horizon's extensive advertising, marketing, and promotion of its SLIMYGLOOP MIX'EMS play gel kits featuring SLIMYGLOOP MIX'EMS Trade Dress, as well as unsolicited media coverage and consumer reviews of the same, the SLIMYGLOOP MIX'EMS Trade Dress is a strong source identifier in the marketplace for Horizon and Horizon's SLIMYGLOOP MIX'EMS play gel kits.

28.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress has acquired distinctiveness.

29.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress is non-functional.

30.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress is ornamental and used on the packaging for Horizon's SLIMYGLOOP MIX'EMS play gel kits for aesthetic and marketing purposes.

31.     Horizon owns all rights, title, and interest in and to the Horizon SLIMYGLOOP MIX'EMS Trade Dress.

32.     The SLIMYGLOOP MIX'EMS Trade Dress represents a valuable asset for Horizon.

**D.     Horizon's Copyrighted SLIMYGLOOP MIX'EMS Designs**

33.     The designs for Horizon's SLIMYGLOOP MIX'EMS play gel kits constitute original works of authorship, fixed in tangible mediums of expression.

34.     Pursuant to 17 U.S.C. § 411(a), Horizon owns numerous copyright registrations for its designs, including.

| Copyright<br>(the "Copyrighted Designs") | Registration No. | Registration Date |
|---|---|---|
| Dragon SlimyGloop Mix'ems | VA 2-128-478 | November 30, 2018 |
| Gross SlimyGloop Mix'ems | VA 2-128-640 | November 30, 2018 |
| Unicorn SlimyGloop Mix'ems | VA 2-128-639 | November 30, 2018 |

35.     Attached hereto as **Exhibit B** are true and correct copies of the copyright registrations for the Copyrighted Designs, registered with the United States Copyright Office.

**E.     Horizon's SLIMYGLOOP MIX'EMS play gel kits Enjoy Enormous Consumer Goodwill and Commercial Success**

36.     Horizon's SLIMYGLOOP MIX'EMS play gel kits offered under Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks are for sale in prominent retailers around the country, including Target, Barnes & Noble, Walmart, and Hobby Lobby, as well as, on the Internet, including through websites such as Amazon.com.

37.     Horizon expends substantial resources on advertising, marketing, and promoting its SLIMYGLOOP MIX'EMS play gel kits under its SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

38.     These efforts have paid tremendous dividends, as Horizon's SLIMYGLOOP MIX'EMS play gel kits offered have been the subject of widespread, unsolicited media coverage and consumer reviews.  *See* **Exhibits C** and **D**.  In fact, Horizon's SLIMYGLOOP MIX'EMS play gel kits were considered one of the "Hottest Toys for 2018."  *See* **Exhibit E**.

39.     Horizon's SLIMYGLOOP MIX'EMS play gel kits offered under and featuring the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, SLIMYGLOOP MIX'EMS Trade Dress and SLIMYGLOOP Copyrighted Designs enjoy enormous consumer goodwill and commercial success.

40.     Indeed, in less than two years, Horizon has sold millions of dollars' worth of SLIMYGLOOP MIX'EMS play gel kits offered under and bearing the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, SLIMYGLOOP MIX'EMS Trade Dress and SLIMYGLOOP Copyrighted Designs.

**F.     Best Brands and the Infringing Products**

41.     Upon information and belief, Best Brands is an inexpensive supplier of "knockoff" children's activity kits in the United States.

42.     Upon information and belief, Best Brands' business model is to identify successful products in the toy industry and to create inexpensive counterfeit versions of these toys.

43.     Upon information and belief, after Horizon began using its SLIMYGLOOP Marks, Best Brands adopted and began using the mark MIX'N PLAY SLIME (the "Infringing Mark") and the below trade dress (the "Infringing Trade Dress") (collectively, the "Infringing Marks"), for the inset play-gel products (the "Infringing Products"):



44.     The Infringing Marks are confusingly similar in sight, sound, connotation, and commercial impression to Horizon's SLIMYGLOOP Marks.

45.     Best Brands' substitution of the SlimyGloop with "Slime" and Mix'ems with "Mix'n Play" does not differentiate or distinguish Best Brands' confusingly similar MIX'N PLAY SLIME mark from Horizon's SLIMYGLOOP Marks.

46.     Moreover, as described in paragraph 21, *supra*, Horizon's SLIMYGLOOP MIX'EMS Trade Dress consists of, *inter alia* : (i) the trademarks SLIMYGLOOP and/or SLIMYGLOOP MIX'EMS centered at the top of the consumer-facing packaging; (ii) the tagline "Just Mix & Play"; (iii) a product configuration comprising a reusable container, glitter slime, and three unique embellishments; (iv) a sub-product name in white bubble letters in the bottom left-hand corner; and (v) a packaging layout comprising three small circular containers wrapping around a single larger circular container.

47.     As can be shown by the side-by-side comparison below, the Infringing Trade Dress similarly include: (i) the words MIX'N PLAY SLIME centered at the top of the consumer-facing packaging; (ii) a product configuration comprising a reusable container, glitter slime, and three unique embellishments; and (iii) a packaging layout comprising three small circular containers wrapping around a single larger circular container.

 

 

 

48.     Furthermore, the Infringing Products copy numerous other features of Horizon's SLIMYGLOOP MIX'EMS play gel kits.

49.     Horizon has a SLIMYGLOOP MIX'EMS play gel kit called Unicorn.  Best Brands knockoff version is also called Unicorn.  Just like that of Horizon's Unicorn SLIMYGLOOP MIX'EMS play gel kit, the theme of Best Brands' Unicorn play gel kit comprises two unicorn figurines, 50 faceted beads, a glitter packet, and a dark pink glitter play gel.

| Horizon's Unicorn Play Gel | Best Brands' Knockoff Version |
|---|---|
| | |

50.     Horizon has a SLIMYGLOOP MIX'EMS play gel kit called Dragon.  Best Brands knockoff version is also called Dragon.  Just like that of Horizon's Dragon SLIMYGLOOP MIX'EMS play gel kit, the theme of Best Brands' Dragon play gel kit comprises two dragon figurines, 40 metallic faceted beads, foam balls, and a dark red glitter play gel.

| Horizon's Dragon Play Gel | Best Brands' Knockoff Version |
|---|---|
|  | |

51.     Horizon has a SLIMYGLOOP MIX'EMS play gel kit called Gross.  Best Brands knockoff version is called Monster.  Just like that of Horizon's Gross SLIMYGLOOP MIX'EMS play gel kit, the theme of Best Brands' Monster play gel kit comprises 50 wiggly eyes, 30 poms, foam balls, and a neon green glitter play gel.

| Horizon's Gross Play Gel | Best Brands' Knockoff Version |
| --- | --- |



52.     Upon information and belief, Best Brands adopted its confusingly similar Infringing Marks with actual knowledge of Horizon's rights in and to Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

53.     Best Brands advertises, markets, and promotes its Infringing Products to the same consumers as those of Horizon's SLIMYGLOOP MIX'EMS play gel kits.

54.     Best Brands advertises, markets, and promotes its Infringing Products in the same channel of trade as those of Horizon's SLIMYGLOOP MIX'EMS play gel kits

55.     Consumers are exposed to Best Brands' Infringing Products and Horizon's SLIMYGLOOP MIX'EMS play gel kits at common Internet retailers, such as Walmart.com and Amazon.com.

56.     Upon information and belief, Best Brands adopted the Infringing Marks to trade off the extensive consumer recognition and commercial success enjoyed by Horizon's SLIMYGLOOP MIX'EMS play gel kits offered under Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

57.     Without Horizon's authorization, permission, or consent, Best Brands has willfully used, copied, adapted, displayed, or reproduced the original constituent elements of the Copyrighted Designs on and in connection with its Infringing Products.

58.     It is also clear from the striking and substantial similarity between the Copyrighted Designs and the Infringing Products that Best Brands had seen the Copyrighted Designs, and then intentionally copied it in designing the Infringing Products.

59.     Best Brands, by its acts complained of herein, has infringed the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks and the Copyrighted Designs, unfairly competed with Horizon in the marketplace, and otherwise improperly used the reputation and goodwill of Horizon to promote the Infringing Products, which is not connected with, or authorized, approved, licensed, produced or sponsored by, Horizon.

60.     Best Brands' acts of infringement have caused Horizon to sustain monetary damage, loss and injury, in an amount to be determined at trial.

61.     Best Brands has engaged in these activities willfully, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

62.     The aforesaid acts of Best Brands have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss and injury to Horizon, for which Horizon have no adequate remedy at law.

## COUNT I
### (Federal Trademark Infringement Under 15 U.S.C. § 1114)

63.     Horizon incorporates paragraphs 1-62 of the Complaint as though set forth fully herein.

64.     Count I is for federal trademark infringement in violation of 15 U.S.C. § 1114.

- 24 -

65.     Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks (including, without limitation, the '827 and '966 Registrations).

66.     Horizon's rights in and to the SLIMYGLOOP Marks predate any rights that Best Brands could claim in and to the confusingly similar Infringing Marks.

67.     Horizon's SLIMYGLOOP Marks are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

68.     Horizon's SLIMYGLOOP Marks have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits.

69.     Best Brands' use in commerce of the Infringing Marks to advertise, market, promote, distribute, offer for sale, and/or sell Best Brands' products (including, but not limited to, the Infringing Products), without Horizon's consent, is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Best Brands is Horizon, or is a licensee, authorized distributor, or affiliate of Horizon, or that Best Brands, its activities, and/or its products, are authorized, endorsed, sponsored, or approved by Horizon, or vice versa.

70.     Upon information and belief, Best Brands adopted and uses the Infringing Marks in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks.

71.     Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Marks, to which it is not entitled in law or equity.

72.     Upon information and belief, Best Brands' acts and conduct complained of herein constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

73.     Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Marks, unless restrained by law.

74.     Horizon has no adequate remedy at law.

### COUNT II
### (Federal Trademark Infringement Under 15 U.S.C. § 1125(a))

75.     Horizon incorporates paragraphs 1-74 of the Complaint as though set forth fully herein.

76.     Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

77.     Horizon's rights in and to the SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks predate any rights that Best Brands could claim in and to the confusingly similar Infringing Marks.

78.     Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

79.     Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits offered under the SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

80.     Best Brands' use in commerce of the Infringing Marks to advertise, market, promote, distribute, offer for sale, and/or sell Best Brands' products (including, but not limited to, the Infringing Products), without Horizon's consent, is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Best Brands is Horizon, or is a licensee, authorized distributor, or affiliate of Horizon, or that Best Brands, its activities, and/or its products, are authorized, endorsed, sponsored, or approved by Horizon, or vice versa.

- 26 -

81.     Upon information and belief, Best Brands adopted and uses the confusingly similar Infringing Mark in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

82.     Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Marks, to which it is not entitled in law or equity.

83.     Upon information and belief, Best Brands' acts and conduct complained of herein constitute federal trademark infringement in violation of 15 U.S.C. § 1125(a).

84.     Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Marks, unless restrained by law.

85.     Horizon has no adequate remedy at law.

## COUNT III
### (Federal Trade-Dress Infringement Under 15 U.S.C. § 1125(a))

86.     Horizon incorporates paragraphs 1-85 of the Complaint as though set forth fully herein.

87.     Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP MIX'EMS Trade Dress.

88.     Horizon's rights in and to the SLIMYGLOOP MIX'EMS Trade Dress predate any rights that Best Brands could claim in and to the Infringing Trade Dress.

89.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress is non-functional.

90.     Horizon's SLIMYGLOOP MIX'EMS Trade Dress is distinctive as to the source of Horizon's SLIMYGLOOP MIX'EMS play gel kits, and has acquired secondary meaning

because consumers associate Horizon as the source of SLIMYGLOOP MIX'EMS play gel kits featuring the SLIMYGLOOP MIX'EMS Trade Dress.

91.     Best Brands' use of its confusingly similar Infringing Trade Dress in commerce to advertise, market, promote, distribute, offer for sale, and/or sell Best Brands' Infringing Products is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Best Brands is Horizon, and/or that Best Brands is a licensee, authorized distributor, or affiliate of Horizon and/or Horizon's play gel kits featuring Horizon's SLIMYGLOOP MIX'EMS Trade Dress, and/or that Best Brands, its activities, and/or its Infringing Products are authorized, endorsed, sponsored or approved by Horizon, and/or that Best Brands, its activities, or vice versa.

92.     Upon information and belief, Best Brands adopted and uses its confusingly similar Infringing Trade Dress in furtherance of Best Brands' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill and commercial success of Horizon's SLIMYGLOOP Trade Dress.

93.     Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from the sale of products featuring Best Brands' confusingly similar Infringing Trade Dress, to which it is not entitled in law or equity.

94.     Upon information and belief, Best Brands' acts and conduct complained of herein constitute federal trade-dress infringement in violation of 15 U.S.C. § 1125(a).

95.     Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of its confusingly similar Infringing Trade Dress, unless restrained by law.

96.     Horizon has no adequate remedy at law.

## COUNT IV
### (Federal Unfair Competition Under 15 U.S.C. § 1125(a))

97.    Horizon incorporates paragraphs 1-96 of the Complaint as though set forth fully herein.

98.    Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, SLIMYGLOOP MIX'EMS Trade Dress and the Copyrighted Designs.

99.    Horizon's rights in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress predate any rights that Best Brands could claim in and to the confusingly similar Infringing Mark and Infringing Trade Dress.

100.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

101.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits.

102.    Best Brands' acts and conduct as described herein are likely to cause confusion, cause mistake, and/or deceive the public into mistakenly believing that the Infringing Products are either Horizon's SLIMYGLOOP MIX'EMS play gel kits or that the Infringing Products originate from or is somehow connected to or associated with Horizon and/or SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress, such as being sold or sponsored by the same party.  Such acts constitute unfair competition, at least because Best Brands has obtained an unfair advantage as compared to Horizon, through their use

of the Infringing Mark and Infringing Trade Dress to falsely designate the origin, affiliation or sponsorship of Best Brands and the Infringing Products.

103.    Upon information and belief, Best Brands adopted and uses the confusingly similar Infringing Mark and Infringing Trade Dress in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

104.    Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Mark and Infringing Trade Dress, to which it is not entitled in law or equity.

105.    Upon information and belief, Best Brands' acts and conduct complained of herein constitute federal unfair competition in violation of 15 U.S.C. § 1125(a).

106.    Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Mark and Infringing Trade Dress, unless restrained by law.

107.    Horizon has no adequate remedy at law.

## COUNT V
## Copyright Infringement Under 17 U.S.C. § 501

108.    Horizon incorporates paragraphs 1-107 of the Complaint as though fully set forth herein.

109.    Horizon's Copyrighted Designs are original, creative works in which Horizon owns all copyright interests.

110.    On information and belief, Best Brands had access to Horizon's Copyrighted Designs including, but not limited to, at retail outlets and trade shows where Horizon's Copyrighted Designs were displayed and/or available for sale.

111.    Without Horizon's authorization, permission, or consent, Best Brands used, copied, displayed, adapted, and/or reproduced the original constituent elements of Horizon's Copyrighted Designs such that Best Brands' Infringing Products are identical or substantially similar to Horizon's Copyrighted Designs.

112.    On information and belief, Best Brands had knowledge of Horizon's rights in and to the Copyrighted Designs before using, copying, displaying, adapting, and/or reproducing the original constituent elements thereof.

113.    Upon information and belief, Best Brands' acts and conduct complained of herein constitute copyright infringement in violation of 17 U.S.C. § 501.

114.    Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' unauthorized use, copying, display, adaption, and/or reproduction of the original constituent elements of Horizon's Copyrighted Designs unless restrained by law.

115.    Horizon has no adequate remedy at law.

<u>COUNT VI</u>
<u>(Trademark Infringement Under N.J.S.A. § 56:4-1)</u>

116.    Horizon incorporates paragraphs 1-115 of the Complaint as though set forth fully herein.

117.    Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks (including, without limitation, the '827 Registration, and the '966 Registration).

118. Horizon's rights in and to the SLIMYGLOOP Marks predate any rights that Best Brands could claim in and to the confusingly similar Infringing Marks.

119. Horizon's SLIMYGLOOP Marks are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

120. Horizon's SLIMYGLOOP Marks have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits offered under the SLIMYGLOOP Marks.

121. Best Brands' use in commerce of the Infringing Marks to advertise, market, promote, distribute, offer for sale, and/or sell Best Brands' products (including, but not limited to, the Infringing Products), without Horizon's consent, is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Best Brands is Horizon, or is a licensee, authorized distributor, or affiliate of Horizon, or that Best Brands, its activities, and/or its products, are authorized, endorsed, sponsored, or approved by Horizon, or vice versa.

122. Upon information and belief, Best Brands adopted and uses the confusingly similar Infringing Marks in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks and SLIMYGLOOP MIX'EMS Marks.

123. Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Marks, to which it is not entitled in law or equity.

124. Upon information and belief, Best Brands' acts and conduct complained of herein constitute trademark infringement in violation of N.J.S.A. § 56:4-1.

125.    Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Marks, unless restrained by law.

126.    Horizon has no adequate remedy at law.

## COUNT VII
## (Trademark Infringement Under New Jersey Common Law)

127.    Horizon incorporates paragraphs 1-126 of the Complaint as though set forth fully herein.

128.    Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

129.    Horizon's rights in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress predate any rights that Best Brands could claim in and to the confusingly similar Infringing Mark and Infringing Trade Dress.

130.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

131.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits.

132.    Best Brands' use in commerce of the Infringing Marks to advertise, market, promote, distribute, offer for sale, and/or sell Best Brands' products (including, but not limited to, the Infringing Products), without Horizon's consent, is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Best Brands is Horizon, or is a

licensee, authorized distributor, or affiliate of Horizon, or that Best Brands, its activities, and/or its products, are authorized, endorsed, sponsored, or approved by Horizon, or vice versa.

133.    Upon information and belief, Best Brands adopted and uses the confusingly similar Infringing Mark and Infringing Trade Dress in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

134.    Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Mark and Infringing Trade Dress, to which it is not entitled in law or equity.

135.    Upon information and belief, Best Brands' acts and conduct complained of herein constitute trademark infringement in violation of New Jersey common law.

136.    Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Mark and Infringing Trade Dress, unless restrained by law.

137.    Horizon has no adequate remedy at law.

## COUNT VIII
### (Unfair Competition Under N.J.S.A. § 56:4-1)

138.    Horizon incorporates paragraphs 1-137 of the Complaint as though fully set forth herein.

139.    Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

140.    Horizon's rights in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress predate any rights that Best Brands could claim in and to the confusingly similar Infringing Mark and Infringing Trade Dress.

141.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

142.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits.

143.    Best Brands' acts and conduct as described herein are likely to cause confusion, cause mistake, and/or deceive the public into mistakenly believing that the Infringing Products are either Horizon's SLIMYGLOOP MIX'EMS play gel kits or that the Infringing Products originate from or is somehow connected to or associated with Horizon and/or SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress, such as being sold or sponsored by the same party.  Such acts constitute unfair competition, at least because Best Brands has obtained an unfair advantage as compared to Horizon, through their use of the Infringing Mark and Infringing Trade Dress to falsely designate the origin, affiliation or sponsorship of Best Brands and the Infringing Products.

144.    Upon information and belief, Best Brands adopted and uses the confusingly similar Infringing Mark and Infringing Trade Dress in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

145.     Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Mark and Infringing Trade Dress, to which it is not entitled in law or equity.

146.     Upon information and belief, Best Brands' acts and conduct complained of herein constitute unfair competition in violation of N.J.S.A. § 56:4-1.

147.     Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Mark and Infringing Trade Dress, unless restrained by law.

148.     Horizon has no adequate remedy at law.

### COUNT IX
### (Unfair Competition Under New Jersey Common Law)

149.     Horizon incorporates paragraphs 1-148 of the Complaint as though set forth fully herein.

150.     Horizon is the exclusive owner of all rights, title, and interest in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

151.     Horizon's rights in and to the SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress predate any rights that Best Brands could claim in and to the confusingly similar Infringing Mark and Infringing Trade Dress.

152.     Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress are inherently distinctive for Horizon's SLIMYGLOOP MIX'EMS play gel kits.

153.    Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress have acquired distinctiveness because consumers associate Horizon as the exclusive source of SLIMYGLOOP MIX'EMS play gel kits.

154.    Best Brands' acts and conduct as described herein are likely to cause confusion, cause mistake, and/or deceive the public into mistakenly believing that the Infringing Products are either Horizon's SLIMYGLOOP MIX'EMS play gel kits or that the Infringing Products originate from or is somehow connected to or associated with Horizon and/or SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress, such as being sold or sponsored by the same party.  Such acts constitute unfair competition, at least because Best Brands has obtained an unfair advantage as compared to Horizon, through their use of the Infringing Mark and Infringing Trade Dress to falsely designate the origin, affiliation or sponsorship of Best Brands and the Infringing Products.

155.    Upon information and belief, Best Brands adopted and uses the confusingly similar Infringing Mark and Infringing Trade Dress in furtherance of its willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and commercial success enjoyed by Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks, and SLIMYGLOOP MIX'EMS Trade Dress.

156.    Upon information and belief, Best Brands has made, and will continue to make, substantial profits and gain from using the confusingly similar Infringing Mark and Infringing Trade Dress, to which it is not entitled in law or equity.

157.    Upon information and belief, Best Brands' acts and conduct complained of herein constitute unfair competition in violation of New Jersey Common Law.

158.    Horizon has suffered, and will continue to suffer, irreparable harm from Best Brands' use of the confusingly similar Infringing Mark and Infringing Trade Dress, unless restrained by law.

159.    Horizon has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Horizon prays for judgment against Best Brands as follows:

A.    That Best Brands, its managers, members, agents, representatives, employees, and agents, and those persons in active concert or participation with them, who receive actual notice of the Order by personal service or otherwise, be permanently enjoined from:

(1)    Using the Infringing Mark and/or the Infringing Trade Dress, or any reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation thereof, as, or as any portion of, a trademark or trade dress used in the connection with the sale or provision of any good or service covered by any of Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks or SLIMYGLOOP MIX'EMS Trade Dress.

(2)    Engaging in acts that constitute infringement, unfair competition, false representation, or false designation of origin under federal or New Jersey trademark law and which would damage or injure Horizon;

(3)    Engaging in acts that constitute infringement of Horizon's Copyrighted Designs under federal copyright law and which would damage or injure Horizon; or

(4)    Inducing, encouraging, instigating, aiding, abetting, or contributing to any of the aforesaid acts.

B.     That Best Brands be required to take any actions this Court may direct for the purpose of attempting to remedy and alleviate any instance(s) of consumer confusion or mistake, or any loss of goodwill or distinctiveness suffered by Horizon or the SLIMYGLOOP Marks, as a result of Best Brands' acts;

C.     That in accordance with 15 U.S.C. § 1118, Best Brands be ordered to deliver up for destruction, as this Court shall direct, all articles, labels, signs, prints, packages, wrappers, receptacles, and advertisements (and the like) in its possession or under its custody or control that use the Infringing Marks and the Infringing Trade Dress in connection with any good or service covered by any of Horizon's SLIMYGLOOP Marks, SLIMYGLOOP MIX'EMS Marks and SLIMYGLOOP MIX'EMS Trade Dress;

D.      That in accordance with 15 U.S.C. § 1116, Best Brands be directed to file with this Court and serve on Horizon, no later than thirty days after receiving service of this Order, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the Order;

E.     That in accordance with 15 U.S.C. § 1117(a), Best Brands be ordered to:

(1)     Account for and pay over to Horizon three times all of the gains, profits, savings, and advantages realized by Best Brands from its unlawful activities;

(2)     Pay over to Horizon treble damages sustained by Horizon from Best Brands' unlawful activities;

(3)     Reimburse Horizon for the costs of this action; and

(4)     Reimburse Horizon for any reasonable attorney's fees and costs incurred as a result of Best Brands' unlawful activities, including all attorney's fees and costs incurred during this action;

F.     That Horizon be awarded both pre-judgment and post-judgment interest on any monies to

be paid to Horizon by Best Brands;

G.     An Order awarding Horizon punitive and exemplary damages as permitted by New Jersey

law;

H.     That Horizon be awarded such other and further relief as this Court may deem just and

proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Horizon hereby demands a trial by

jury of all issues so triable.

Dated: <u>March 1, 2019</u>                         Respectfully submitted,

<u>/s/ Jeremy Boczko</u>
James E. Rosini (to apply *pro hac vice*)
Jeremy Boczko (DNJ Bar. No. 031702011)
Armin Ghiam (DNJ Bar. No. 064522013)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 309-1000
Fax: (212) 309-1100
Email: JRosini@HuntonAK.com
Email: JBoczko@HuntonAK.com
Email: AGhiam@HuntonAK.com

*Attorneys for Defendant/Counterclaim-Plaintiff Horizon Group USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing document was filed electronically with the Court on <u>March 1, 2019</u>.

Notice of this filing was sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

<u>/s/ *Armin Ghiam*              </u>
Attorney for Defendant/Counterclaim
Plaintiff Horizon Group USA, Inc.
